## A90A0028. CALHOUN v. TAPLEY.
(395 SE2d 848)

BANKE, Presiding Judge.

The appellant, Carolyn Calhoun, sued the appellee, Duston Tapley, for alleged legal malpractice. She brings this appeal from the grant of Tapley's motion for summary judgment.

In July of 1983, the appellant arranged to help an acquaintance, O. E. Smith, purchase a residence by securing financing from her bank, purchasing the property herself, and then deeding it over to Smith in a "wraparound" transaction in which he undertook to pay the bank financing, and she received from him a promissory note and a security deed to the property. The appellee represented Smith in the transaction and prepared the note and deed to secure debt. The appellant informed Smith of her bank's requirement that a policy of casualty insurance be obtained on the property covering the bank as loss payee, and Smith obtained such a policy.

Approximately five months after the transaction was consummated, the residence was destroyed by fire, whereupon Smith stopped making the payments required under the promissory note and security deed. When the appellant asked Smith about the insurance proceeds, he informed her that the appellee was handling the matter. The appellant averred in an affidavit submitted in response to the appellee's motion for summary judgment that she spoke with the appellee about the insurance proceeds on several occasions thereafter and that he always assured her he was taking care of the matter, even going so far as to tell her on a few occasions that he was expecting the money within a week or two. However, the insurance company denied Smith's claim and obtained summary judgment in a subsequent suit by him to recover on the policy, on the ground that the action had not been brought within the one-year limitation period specified in the contract. The latter action was filed on Smith's behalf by Lee Meadows, an attorney who shared offices with the appellee. Mr. Meadows subsequently filed another suit against the insurance company on behalf of the appellant, but the company was also awarded summary judgment in that action. Mr. Meadows signed the complaint in the latter action on behalf of "Tapley and Meadows . . . Attorneys for Plaintiff."

In the present malpractice action, the appellant alleges that an attorney-client relationship existed between herself and the appellee and that he breached a duty to her arising from that relationship by allowing the contractual limitation period set forth in the insurance policy to expire before bringing suit on the policy. However, the trial court concluded that there was no evidence to controvert the appellee's testimony that no attorney-client relationship had in fact existed between himself and the appellant. *Held*:

"Generally, the relation of attorney and client is a matter of contract but the contract may be express, or implied from the conduct of the parties. The employment is sufficiently established when it is shown that the advice or assistance of the attorney is sought and received in matters pertinent to his profession. [Cits.]" *In the Matter of Dowdy*, 247 Ga. 488, 491 (277 SE2d 36) (1981). While the payment of a fee is relevant to the inquiry and may in some circumstances be controlling, "an attorney-client relationship may be found to exist where no fee is paid . . . [a]nd the payment of a fee does not necessarily demonstrate the existence of the relationship." *Guillebeau v. Jenkins*, 182 Ga. App. 225, 230 (355 SE2d 453) (1987). All that is necessary is a "reasonable belief" on the part of the would-be client that he or she was being represented by the attorney. Id. at 231. A reasonable belief is one which is "reasonably induced by representations or . . . conduct" on the part of the attorney. Id. at 230.

In *Guillebeau*, supra, this court held that the defendant in a legal malpractice action was entitled to summary judgment based on the absence of any evidence that he had done or said anything to lead the would-be client to believe he was representing her. There is, however, ample such evidence in the present case. In her affidavit submitted in response to the appellee's motion for summary judgment, the appellant averred as follows: "[The appellee] led me to believe that he was looking after my interest as well as Mr. Smith's interest. [The appellee] treated me as a client, he discussed the case with me openly and freely and answered all my questions, giving me the assurance that everything was being done to process the claim. In fact, on a few occasions, he told me that he was expecting to receive the money within a week or two. I knew that communications between an attorney and client were supposed to be confidential and in discussing the matter with me, [the appellee] never advised or indicated to me in any respect that he could not discuss it with me because he did not represent me or because he represented Mr. Smith and therefore could not talk with me about the case. . . . He never advised me that I should retain some other attorney or go and speak with another attorney concerning the handling of the matter. In all respects he indicated to me and assured me that he was handling the matter properly and expected to receive the proceeds of the insurance policy at any time. Had [the appellee] at any time indicated to me that he was not my attorney or not acting on my behalf or not acting to protect my interest, I would have gotten my own attorney involved in the matter. After a period of time of receiving these assurances from [the appellee], [he] advised me that he was having to file suit against the insurance company to collect the proceeds. Several months after that [he] told me that the insurance was not going to pay Mr. Smith's claim and that he . . . would be filing suit against the insurance company

on my behalf. At this time there was no discussion about whether or not [the appellee] would or should represent me, it was simply assumed that since he had been representing me he would continue to represent me in filing a suit against the insurance company on my behalf. . . . Several months after this suit was filed, [the appellee] advised me that I had lost also and that the insurance company was not going to have to pay a dime. He told me that the reason for this was because he had failed to prepare or file the proper paperwork within the required time period. [The appellee] said that this was his mistake and his fault and he did not blame me if I sued him. He told me that he had insurance to cover this and gave me the name of the insurance company."

The appellant was not the only person laboring under the belief that the appellee was representing her. As previously indicated, Mr. Meadows, the attorney who filed suit against the insurance company on her behalf, signed the complaint in that action on behalf of "Tapley and Meadows . . . Attorneys for Plaintiff." Moreover, the attorney who had represented the insurance company in connection with the matter submitted an affidavit averring as follows: "Sometime during the course of my handling this file on behalf of [the insurance company] I was contacted one day by [the appellant] who wanted to discuss the status of the claim. At that time I advised [the appellant] that it was my understanding that she was being represented by [the appellee] and that I would not talk to her unless [the appellee] agreed. I asked her if I could call [the appellee] and confirm whether or not it was agreeable for me to talk with [her]. I called [the appellee] on the phone, told him that [the appellant] was in my office, that she wanted to discuss the case, that it was my understanding that he represented her with regard to the claim and asked if he had any objection to my talking with her. [The appellee] said he had no objection. He did not, in any way, indicate to me that he did not represent [the appellant]. Rather, his response to my inquiry only confirmed my prior understanding that he did represent [the appellant] as well as O. E. Smith with regard to the claim for fire loss benefits against [the insurance company]."

Based on the foregoing evidence and authorities, we conclude that a genuine issue of material fact exists as to whether an attorney-client relationship existed between the parties and that the trial court accordingly erred in granting the appellee's motion for summary judgment.

*Judgment reversed. Carley, C. J., McMurray, P. J., Birdsong, Sognier, Pope and Beasley, JJ., concur. Deen, P. J., and Cooper, J., dissent.*

COOPER, Judge, dissenting.

The majority concludes that there was a genuine issue of fact as to whether an attorney-client relationship existed between appellant and appellee. I dissent because I am of the opinion that the evidence did not create a factual issue about the existence of an attorney-client relationship.

It is undisputed that appellee made repeated assurances to appellant that he was handling the matter concerning the insurance proceeds and that because of these repeated assurances, appellant believed that appellee represented her. However, "[a]n attorney-client relationship cannot be created unilaterally in the mind of a would-be client; a reasonable belief is required." *Guillebeau v. Jenkins*, 182 Ga. App. 225, 231 (2) (355 SE2d 453) (1987). Appellant may have had a reasonable belief that appellee was handling the matter, but I cannot conclude that appellant's belief was reasonable that appellee was representing her as an attorney. Appellant, because she was not a loss payee under the policy, had no independent right of action against the insurance company (*Wilson Marine Sales &c. v. Fireman's Fund Ins. Co.*, 133 Ga. App. 220 (1) (211 SE2d 145) (1974)), and her only recourse was to recover against Mr. Smith when he stopped making payments as required under the deed to secure debt and promissory note. Because Mr. Smith declined to honor his legal obligations under the security deed and note, appellant, who was in the precarious position of being ultimately liable to the bank by virtue of the wraparound transaction, clearly would have benefited by the insurance company's payment of the proceeds to the bank. However, her indirect benefit from the payment of the proceeds does not give her a cause of action against the insurance company. See *Insured LLoyds v. Bobo*, 116 Ga. App. 89, 90 (156 SE2d 518) (1967). While I acknowledge appellant's predicament, I cannot conclude, as the majority does, that the evidence raises questions of fact about whether an attorney-client relationship was formed. Therefore, I respectfully dissent.

I am authorized to state that Presiding Judge Deen joins in this dissent.

DECIDED JUNE 25, 1990 —
REHEARING DENIED JULY 12, 1990 — CERT. APPLIED FOR.

*Newton, Smith, Durden & Kaufold, Wilson R. Smith, William R. Rice*, for appellant.

*Barrow, Sims, Morrow & Lee, Jordon D. Morrow, Alan P. Layne*, for appellee.